******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BIRCH HILL RECOVERY CENTER, LLC *v.* HIGH WATCH RECOVERY CENTER, INC.
### (AC 47452)

Alvord, Clark and Seeley, Js.

### *Syllabus*

The plaintiff appealed from the trial court's judgment dismissing its action sounding in, inter alia, tortious interference with prospective business relations, following the court's grant of the defendant's special motion to dismiss filed pursuant to the anti-SLAPP statute (§ 52-196a). The plaintiff, which was seeking to open a substance abuse treatment facility in Kent, where the defendant operated its own such facility, claimed that the court erroneously dismissed the action because it had established that there was probable cause that it would prevail on its claims against the defendant for the defendant's conduct in opposing the plaintiff's opening of the facility. *Held*:

The trial court did not err in granting the defendant's special motion to dismiss, as the court properly concluded that the plaintiff failed to establish probable cause that it would prevail on its claims in light of the defendant's first amendment defense and, accordingly, the plaintiff's claims were barred by the first amendment to the United States constitution.

This court concluded that the plaintiff's claim that the trial court applied the wrong legal standard and should have analyzed the issue of whether the defendant's conduct was protected activity under the sham litigation exception, established by *California Motor Transport Co.* v. *Trucking Unlimited* (404 U.S. 508), to the doctrine of immunity for petitioning activity pursuant to *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.* (365 U.S. 127) and *United Mine Workers of America* v. *Pennington* (381 U.S. 657), was unavailing, as the record showed that the defendant had an objectively reasonable basis for challenging the plaintiff's application seeking to open a substance abuse treatment facility.

Argued March 11—officially released June 10, 2025

### *Procedural History*

Action to recover damages for, inter alia, tortious interference with prospective business relations, and for other relief, brought to the Superior Court in the judicial district of Litchfield at Torrington, where the court, *Lynch, J.*, granted the defendant's special motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Affirmed.*

*Christopher A. Klimmek*, with whom was *Jeffrey P. Mueller*, for the appellant (plaintiff).

*Peter J. Zarella*, with whom was *Snigdha Mamilla-palli*, for the appellee (defendant).

*Opinion*

CLARK, J. The action underlying this appeal arises from the efforts by the plaintiff, Birch Hill Recovery Center, LLC, to open a substance abuse treatment facility (facility) in Kent and the alleged efforts of the defendant, High Watch Recovery Center, Inc., to prevent the plaintiff from doing so. The plaintiff brought this action sounding in tortious interference with prospective business relations and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., alleging that the defendant engaged in anticompetitive conduct designed to prevent the plaintiff from opening the facility by making false or misleading statements to the public and the press, by challenging the plaintiff's efforts to obtain necessary approvals from the Office of Health Care Access (OHCA) and the Kent Planning and Zoning Commission (commission), and by litigating appeals from the decisions of those administrative bodies in the Superior Court, this court, and our Supreme Court. The defendant filed a special motion to dismiss the action pursuant to the anti-SLAPP statute,[1] General Statutes § 52-196a.[2] The court granted that motion, concluding that

---

[1] "SLAPP is an acronym for strategic lawsuit against public participation . . . ." (Internal quotation marks omitted.) *Black Rock Gardens*, *LLC* v. *Berry*, 224 Conn. App. 379, 380 n.1, 312 A.3d 588 (2024).

[2] General Statutes § 52-196a provides in relevant part: "(b) In any civil action in which a party files a complaint, counterclaim or cross claim against an opposing party that is based on the opposing party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, such opposing party may file a special motion to dismiss the complaint, counterclaim or cross claim. . . .

"(e) . . . (3) The court shall grant a special motion to dismiss if the moving party makes an initial showing, by a preponderance of the evidence,

the defendant met its burden under § 52-196a (e) (3) to establish by a preponderance of the evidence that the plaintiff's claims were based on the defendant's exercise of its right to free speech, right to petition the government, or right of association under the United States constitution or the state constitution in connection with a matter of public concern and that the plaintiff failed to meet its burden to establish probable cause that it would prevail on the merits of its claims because (1) the plaintiff's claims were barred in their entirety by the first amendment to the United States constitution[3] and article first, §§ 4, 5 and 14,[4] of the Connecticut constitution, (2) the plaintiff's claims with respect to the defendant's litigation conduct in court and before the OHCA were barred by the absolute litigation privilege, and (3) the plaintiff failed to allege sufficient facts to support its claim for tortious interference with business relations.

that the opposing party's complaint, counterclaim or cross claim is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern, unless the party that brought the complaint, counterclaim or cross claim sets forth with particularity the circumstances giving rise to the complaint, counterclaim or cross claim and demonstrates to the court that there is probable cause, considering all valid defenses, that the party will prevail on the merits of the complaint, counterclaim or cross claim. . . .''

[3] The first amendment to the United States constitution provides in relevant part: ''Congress shall make no law . . . abridging the freedom of speech . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.''

[4] Article first, § 4, of the Connecticut constitution provides: ''Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty.''

Article first, § 5, of the Connecticut constitution provides in relevant part: ''No law shall ever be passed to curtail or restrain the liberty of speech . . . .''

Article first, § 14, of the Connecticut constitution provides: ''The citizens have a right, in a peaceable manner, to assemble for their common good, and to apply to those invested with the powers of government, for redress of grievances, or other proper purposes, by petition, address or remonstrance.''

On appeal, the plaintiff does not argue that the court erred in its determination that the defendant met its initial burden under the first prong of § 52-196a (e) (3). See footnote 2 of this opinion. Instead, the plaintiff claims that the court erred by dismissing the action because it established that there is probable cause that it will prevail on its claims against the defendant. Specifically, the plaintiff contends that (1) the defendant's efforts to challenge the facility in court and administrative proceedings constituted "sham" litigation that is not protected by the first amendment to the federal constitution or the state constitution, (2) the absolute litigation privilege does not bar the plaintiff's claims, and (3) the complaint sufficiently alleged that the defendant's conduct amounted to tortious interference with business relations. We disagree with the plaintiff's claim that it established probable cause that it will prevail on its claim that the defendant's challenges to the facility constituted sham litigation. We, therefore, conclude that the court did not err in its determination that the defendant's conduct was protected by the first amendment. Because that conclusion is sufficient to uphold the dismissal of the complaint, we need not address the plaintiff's other challenges to the judgment of dismissal. Accordingly, we affirm the judgment of the trial court.[5]

---

[5] In its principal appellate brief, the plaintiff also claims that the court erred in denying its motion for leave to amend the complaint, which the plaintiff filed on the morning of oral argument on the special motion to dismiss. In response, the defendant argues that any such error was harmless because the court considered the allegations in the proposed amended complaint and accompanying affidavit in deciding the special motion to dismiss. In its reply brief, the plaintiff concedes that this court need address this claim only if we reverse the judgment of dismissal.

In addition, in its reply brief, the plaintiff challenges the court's decision to award attorney's fees to the defendant pursuant to § 52-196a (f) (1) and claims that, "[i]f this court reverses [the judgment of] dismissal . . . it should also reverse the award of attorney's fees." Because we affirm the judgment of dismissal, we need not address the plaintiff's claims challenging the court's denial of the motion for leave to amend and the court's award of attorney's fees.

The following facts and procedural history are relevant to this appeal.[6] The plaintiff was formed in 2017 for the purpose of establishing the facility. The defendant has operated its own substance abuse treatment facility in Kent since the 1940s. On June 23, 2017, the plaintiff submitted a special permit and site plan application to the commission, seeking to convert a former convalescent home into a substance abuse treatment facility. On October 12, 2017, the commission voted to approve the plaintiff's application. On October 27, 2017, the defendant appealed the commission's decision to the Superior Court. In 2018, the parties reached a settlement allowing the plaintiff to retain its approvals; the settlement did not require the defendant to refrain from further opposing the facility.

Separately, in September, 2017, the plaintiff applied to the OHCA for a certificate of need.[7] The defendant

---

[6] In reviewing the trial court's decision granting a special motion to dismiss pursuant to § 52-196a, we take the facts as they appear in the pleadings, affidavits, and other exhibits submitted by the parties and construe them in the light most favorable to the plaintiff. See *Murphy* v. *Rosen*, 351 Conn. 120, 122, 329 A.3d 913 (2025); *Mulvihill* v. *Spinnato*, 228 Conn. App. 781, 794, 326 A.3d 251, cert. denied, 350 Conn. 926, 326 A.3d 248 (2024).

[7] Pursuant to General Statutes § 19a-638 (a) (1), any person or entity seeking to establish a new health care facility is required to obtain a certificate of need.

"Pursuant to General Statutes (Rev. to 2017) § 19a-612d, the deputy commissioner of public health was responsible for directing and overseeing the OHCA at the time that [the plaintiff] submitted its certificate of need application. Pursuant to No. 18-91, § 1, of the 2018 Public Acts, which became effective May 14, 2018, the [relevant] statutes . . . were amended to create a Health Systems Planning Unit [within the Office of Health Strategy and overseen by the Commissioner of Health Strategy], in lieu of the OHCA." *High Watch Recovery Center, Inc.* v. *Dept. of Public Health*, 207 Conn. App. 397, 400 n.3, 263 A.3d 935 (2021), rev'd on other grounds, 347 Conn. 317, 297 A.3d 531 (2023).

Pursuant to General Statutes § 19a-612d (b), the deputy commissioner of public health retained "independent decision-making authority over only the certificate of need applications that [were] pending before the [OHCA] and . . . deemed completed by said office on or before May 14, 2018. Following the issuance by the Deputy Commissioner of Public Health of a final decision on any such certificate of need application, the Commissioner of Health Strategy shall exercise independent authority on any further action

requested and was granted permission to intervene in the proceedings before the OHCA. On March 28 and May 10, 2018, the OHCA held hearings on the plaintiff's application. The defendant objected to the plaintiff's application on various grounds, including that there was no public need for the facility and that the facility would have a detrimental impact on the state's health care system generally. On November 6, 2018, the hearing officer issued a proposed final decision recommending the denial of the plaintiff's application. The plaintiff filed a brief and presented oral argument in opposition to the proposed final decision. Subsequently, on March 28, 2019, the plaintiff and the Department of Public Health (department) entered into an agreed settlement pursuant to which the plaintiff's application was approved, subject to certain conditions. As part of the agreed settlement, however, the department made findings of fact and conclusions of law in which it found that the plaintiff failed to satisfy ten of the twelve statutory factors it was required to consider in assessing the plaintiff's application.[8] Specifically, the department

required on such certificate of need application or the certificate of need issued pursuant to such application."

In their appellate briefs, both parties refer only to the OHCA and the Department of Public Health when discussing the certificate of need proceedings. In the interest of simplicity and clarity, we likewise refer solely to the OHCA in this opinion.

[8] At the time of the plaintiff's application, General Statutes (Rev. to 2017) § 19a-639 (a) required the OHCA to consider twelve "guidelines and principles" in assessing the application:

"(1) Whether the proposed project is consistent with any applicable policies and standards adopted in regulations by the Department of Public Health;

"(2) The relationship of the proposed project to the state-wide health care facilities and services plan;

"(3) Whether there is a clear public need for the health care facility or services proposed by the applicant;

"(4) Whether the applicant has satisfactorily demonstrated how the proposal will impact the financial strength of the health care system in the state or that the proposal is financially feasible for the applicant;

"(5) Whether the applicant has satisfactorily demonstrated how the proposal will improve quality, accessibility and cost effectiveness of health care

found that: the "application is not consistent with the Statewide Health Care Facilities and Services Plan"; the plaintiff "has not sufficiently demonstrated that there is a clear public need for the proposal"; the plaintiff "has not satisfactorily demonstrated that the proposal will improve the accessibility, quality and cost effectiveness of health care delivery in the region"; the plaintiff "has not sufficiently demonstrated that there would be no adverse change to the provision of health care services to the relevant populations and payer mix, including access to services by Medicaid recipients and indigent persons"; the plaintiff "failed to submit evidence that there are persons that have sought [the type of treatment to be provided at the facility] but were unable to find it in Connecticut"; the plaintiff "has not provided any historical utilization of behavioral health treatment services in the service area that would support [the] proposal"; the plaintiff "has not satisfactorily

---

delivery in the region, including, but not limited to, provision of or any change in the access to services for Medicaid recipients and indigent persons;

"(6) The applicant's past and proposed provision of health care services to relevant patient populations and payer mix, including, but not limited to, access to services by Medicaid recipients and indigent persons;

"(7) Whether the applicant has satisfactorily identified the population to be served by the proposed project and satisfactorily demonstrated that the identified population has a need for the proposed services;

"(8) The utilization of existing health care facilities and health care services in the service area of the applicant;

"(9) Whether the applicant has satisfactorily demonstrated that the proposed project shall not result in an unnecessary duplication of existing or approved health care services or facilities;

"(10) Whether an applicant, who has failed to provide or reduced access to services by Medicaid recipients or indigent persons, has demonstrated good cause for doing so, which shall not be demonstrated solely on the basis of differences in reimbursement rates between Medicaid and other health care payers;

"(11) Whether the applicant has satisfactorily demonstrated that the proposal will not negatively impact the diversity of health care providers and patient choice in the geographic region; and

"(12) Whether the applicant has satisfactorily demonstrated that any consolidation resulting from the proposal will not adversely affect health care costs or accessibility to care."

demonstrated that [the] proposal would not result in an unnecessary duplication of existing services in the area"; the plaintiff "has not satisfactorily demonstrated that there will be no reduction in access to services by Medicaid recipients or indigent persons"; the plaintiff "has not satisfactorily demonstrated that the proposal will not negatively impact the diversity of health care providers and client choice in the region"; and the plaintiff "failed to satisfactorily demonstrate that the proposal will not result in any consolidation that would affect health care costs or accessibility to care."[9]

On May 8, 2019, the defendant appealed from the agreed settlement to the Superior Court pursuant to the Uniform Administrative Procedure Act, General Statutes § 4-166 et seq. The Superior Court dismissed the defendant's appeal on the basis that the defendant had not appealed from a final decision. See General Statutes § 4-183 (a).[10] On September 14, 2021, this court affirmed the judgment of dismissal, but, on July 25, 2023, our Supreme Court reversed. See *High Watch Recovery Center, Inc.* v. *Dept. of Public Health*, 207 Conn. App. 397, 263 A.3d 935 (2021), rev'd, 347 Conn. 317, 297 A.3d 531 (2023). On remand, the Superior Court again dismissed the defendant's appeal, concluding that the defendant was not aggrieved by the department's decision to grant the plaintiff a certificate of need. See *High Watch Recovery Center, Inc.* v. *Dept. of Public Health*, Superior Court, judicial district of New Britain, Docket No. CV-19-6052661-S (May 30, 2024). The defendant appealed from the judgment of dismissal, and that

---

[9] The department did not make a finding as to the first factor and found that the plaintiff satisfied the fourth factor. As to the seventh factor, the department found that the plaintiff had "satisfactorily identified the population to be [served]" but that the plaintiff did not demonstrate that that population had a need for the proposed services.

[10] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

appeal remains pending before our Supreme Court at the time of the release of this opinion.[11]

During the pendency of the defendant's appeal from the certificate of need proceedings before the OHCA, the plaintiff has been unable to proceed with the construction of the facility. On October 6, 2023, the plaintiff commenced the present action, alleging that the defendant pursued "a multiyear and multifaceted effort to thwart [the plaintiff's] ability to develop its facility at every step of the process for fear of the perceived competition it would create." The plaintiff alleged that the defendant "did not have a good faith belief to assert that [the plaintiff] did not meet the requirements for [a certificate of need], but instead [opposed the facility] simply because it did not want [the plaintiff] as a putative competitor." To support that claim, the plaintiff alleged that, although the defendant objected to the plaintiff's proposal to include detoxification beds on the basis that there was no public need, the defendant later received approval to expand its own facility to add detoxification beds and then objected to the plaintiff's request to extend the expiration date of the agreed settlement, relying on its expanded capacity to serve the needed population. The plaintiff further alleged that, although the defendant objected to the facility in part on the basis that it "would be a drain on the town's emergency services," when the defendant later sought permission from the commission to expand its own facility, the defendant represented that its expansion would not negatively affect the town's emergency services "because rehabilitation facilities do not have security issues like a prison, and they rarely need to call the police."

---

[11] This court heard oral argument on the defendant's appeal on March 11, 2025, and, following oral argument, recommended that the matter be transferred to the Supreme Court. Thereafter, on April 9, 2025, the appeal was transferred to our Supreme Court pursuant to Practice Book § 65-1.

The plaintiff also alleged that the defendant "embarked on a smear campaign as another attempt to thwart [the plaintiff's] development plans." The plaintiff alleged that Jerry Schwab, the defendant's chief executive officer, "sent a letter to all residents of Kent . . . ostensibly 'alerting' them to [the plaintiff's] proposed plans in advance of the [commission] hearing at which the public could voice its concerns." The plaintiff also alleged that "Schwab made false and misleading statements about [the plaintiff's] leadership" to the Republican-American (newspaper), which quoted him as saying that "the people who are applying and shopping this around town are investment fund people from Manhattan. They don't have one tiny speck of experience with a facility like this. These are venture capitalists that are looking at this. We need to make sure there are proper safety nets." The plaintiff alleged that the defendant's actions "deprived [the plaintiff] of the substantial income and profits that the facility would have generated" and sought damages based on claims of tortious interference with prospective business relations and a violation of CUTPA.

On November 22, 2023, the defendant filed a special motion to dismiss pursuant to § 52-196a, an accompanying memorandum of law, and several exhibits.[12] The defendant claimed that the complaint was based on the defendant's exercise of its rights under the state and federal constitutions to free speech, to petition the government, and to associate in connection with a matter

---

[12] The exhibits attached to the defendant's memorandum of law consisted of the newspaper article; the defendant's petition to intervene in the certificate of need proceedings; the OHCA ruling granting the petition to intervene; letters and emails submitted by members of the community in opposition to the plaintiff's application for a certificate of need; the agreed settlement granting the plaintiff's application for a certificate of need; the defendant's request for reconsideration of the agreed settlement; the order denying the defendant's request for reconsideration; and the order granting the plaintiff's request for an extension of the expiration date of the certificate of need.

of public concern within the meaning of § 52-196a (e) (3). The defendant further claimed that the plaintiff could not meet its burden under § 52-196a (e) (3) to establish probable cause that it would prevail on the merits of its complaint because, inter alia, the complaint was barred by the litigation privilege, the conduct at issue was protected by the first amendment to the United States constitution and article first, §§ 4, 5 and 14, of the Connecticut constitution, and the complaint failed to allege the existence of a business relationship that was harmed by the defendant's allegedly tortious conduct, as required to prevail on a claim of tortious interference with prospective business relations.

In support of its first amendment claim, the defendant argued that "speech that is objectively on a matter of public concern in light of its substance, form, and context is entitled to protection under the first amendment." In support of that argument, the defendant cited *Gleason* v. *Smolinski*, 319 Conn. 394, 125 A.3d 920 (2015), in which our Supreme Court held that the first amendment protected the family of a missing person from liability for intentional infliction of emotional distress for its targeted campaign hanging missing person posters near the home and workplace of the missing person's former girlfriend because that conduct related to a matter of public concern. See id., 425. The defendant argued that the conduct at issue in the present case—namely, communicating with the public and the press and opposing the plaintiff's facility in administrative and judicial proceedings—was protected by the first amendment because "[t]he addition of a substance abuse facility in the middle of Kent, and the governmental approvals that would be required, is plainly a matter of public concern" that is entitled to "the strongest of first amendment protections, notwithstanding [the plaintiff's] bald and conclusory allegations about [the defendant's] motives." The defendant further argued

that the fact that this case involves a dispute between private businesses did not undermine its first amendment claim, citing the United States Supreme Court's decision in *California Motor Transport Co.* v. *Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L. Ed. 2d 642 (1972), for the proposition that "the first amendment's protections apply even in the realm of commercial disputes between competitors . . . ."

The plaintiff filed an opposition to the special motion to dismiss on December 26, 2023.[13] The plaintiff first claimed that the defendant had not met its initial burden under § 52-196a (e) (3) to show that the complaint is based on the defendant's exercise of its rights to speak, petition, or assemble with respect to a matter of public concern. The plaintiff argued that the complaint is not "based on" the defendant's exercise of its first amendment rights but, rather, "is based on [the defendant's] multiyear campaign to take down a perceived competitor and thwart its business development," which, the plaintiff argued, "is simply not the type [of case that] the anti-SLAPP [statute] was designed to prevent . . . ." The plaintiff further argued that, even if the complaint was based on the defendant's exercise of its first amendment rights, the issues involved were not a matter of public concern because the defendant was motivated not by "a desire to protect the community or speak up against potentially harmful development" but, rather, to stifle competition and protect its own business interests.

The plaintiff then claimed that, even if the defendant had met its initial burden under § 52-196a (e) (3), there was probable cause that the plaintiff would prevail on the merits of the complaint. With respect to the first amendment defense, the plaintiff reiterated its argument that the alleged conduct was not protected by

---

[13] The plaintiff did not include any exhibits with its opposition.

the first amendment because that conduct related to a private business dispute and was aimed at thwarting competition. The plaintiff argued that "where speech, petition, or assembly is intended to harm another business, it is no longer protected under the first amendment," and that "[t]his is simply not the type of case involving an exercise of constitutional rights on an issue of public concern for which the first amendment can serve as a defense." The plaintiff further noted that the court in *Gleason* had distinguished between "matters of purely private significance" and "matters of public interest." (Internal quotation marks omitted.) *Gleason* v. *Smolinski*, supra, 319 Conn. 411. Finally, the plaintiff disputed the defendant's reliance on *California Motor Transport Co.* v. *Trucking Unlimited*, supra, 404 U.S. 508, and cited that case for the proposition that the first amendment did not protect "[the defendant's] attempts to squash a potential competitor by using improper means."

On January 8, 2024, the court, *Lynch, J.*, held a hearing on the special motion to dismiss. On the morning of the hearing, the plaintiff filed a motion for continuance and a motion for leave to amend the complaint to add new factual allegations based on information it claimed to have received the day before. The court denied the motion for continuance on the record and indicated it would defer ruling on the motion for leave to amend until after it ruled on the special motion to dismiss. Prior to hearing oral argument, the court inquired whether either party had evidence to present in connection with the special motion to dismiss. The defendant noted that it intended to rely on the exhibits it had attached to its memorandum in support of the special motion to dismiss; see footnote 12 of this opinion; but neither party presented evidence during the hearing.[14]

---

[14] The defendant also indicated that, on the morning of the hearing, it had filed as an additional exhibit a copy of the release that was executed in

On February 23, 2024, the court issued a memorandum of decision granting the special motion to dismiss. In its analysis, the court identified the following conduct and communications that formed the basis of the plaintiff's claims as alleged in the complaint: the defendant's statements to the newspaper and letter to the community about the facility; the defendant's written and oral statements to the commission; the defendant's statements in opposing the plaintiff's certificate of need application before the OHCA; and the defendant's statements in appealing the decisions of the commission and the department. Addressing the first prong of § 52-196a (e) (3), the court determined that all of the challenged conduct constituted an exercise of the defendant's right to free speech and to petition the government, that the defendant's statements to the public and to the newspaper were an exercise of the defendant's right of association, and that the plaintiff's development of the facility is a matter of public concern. The court therefore concluded that the defendant met its initial burden under § 52-196a (e) (3) to establish that the complaint was based on the defendant's rights to free speech, to petition the government, and to associate with respect to a matter of public concern.

The court then addressed whether the plaintiff established probable cause that it would prevail on the merits of its complaint. In assessing the defendant's first amendment defense, because the parties' briefs and arguments focused almost exclusively on whether the defendant's alleged speech and conduct related to a matter of public concern, the court began its analysis

connection with the settlement of the defendant's appeal from the decision of the commission. In its memorandum of decision, the court indicated that it did not consider that exhibit in its decision because the defendant had not explained how that exhibit was relevant to the special motion to dismiss. Because neither party argues that the release is relevant to the plaintiff's claims on appeal, we do not consider that exhibit in our disposition of this appeal.

with a discussion of the United States Supreme Court's opinion in *Snyder* v. *Phelps*, 562 U.S. 443, 131 S. Ct. 1207, 179 L. Ed. 2d 172 (2011). It noted that, in *Snyder*, the court held that the first amendment shielded from tort liability church members who picketed near a soldier's funeral with "signs reflect[ing] the church's view that the United States is overly tolerant of sin and that God kills American soldiers as punishment"; id., 447; because that speech related to a matter of public concern. The court quoted from *Snyder*, which explained that "[s]peech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community . . . or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public . . . . Deciding whether speech is of public or private concern requires [the court] to examine the content, form, and context of that speech, as revealed by the whole record." (Citations omitted; internal quotation marks omitted.) Id., 453.

Applying that standard, the court determined that "[t]he development of a new substance abuse treatment facility relates to the broad societal concerns of the community in which the facility plans to operate, and, thus, just as in *Snyder*, the defendant's alleged conduct relates to a matter of public concern." The court also rejected the plaintiff's contention that the defendant's alleged anticompetitive purpose precluded a determination that its speech and petitioning activity related to a matter of public concern. As the court explained, "the allegations that the defendant in the present case is motivated by a personal desire to harm its competitor does not transform its speech regarding the substance abuse treatment facility into a purely private matter. . . . Even if the defendant acted solely with a business motivation, it could still have intended to persuade others regarding the development of the substance abuse

treatment facility, just as the speech in *Gleason* could have also been intended [not merely to] harass the plaintiff but persuade her regarding a matter of public concern." (Citation omitted.) The court concluded that, because the defendant's conduct was protected by the first amendment, the plaintiff failed to meet its burden to establish probable cause that it would prevail on the merits of its complaint.[15] The court thereafter rendered judgment dismissing the plaintiff's complaint.[16]

On appeal, the plaintiff does not argue that the court erred in concluding that the defendant met its initial burden under the first prong of § 52-196a (e) (3). Rather, the plaintiff focuses its challenge on the court's conclusion that the plaintiff failed to establish probable cause that it would prevail on the merits of the complaint. The plaintiff claims that the court erred in concluding that the first amendment to the federal constitution, the state constitution, and the litigation privilege protected the defendant's conduct in opposing the proposed substance abuse treatment facility and in concluding that the plaintiff did not establish probable cause that it would prevail on its tortious interference claim because it failed to allege the existence of a business relationship.

With respect to the first amendment defense, the plaintiff claims that the court applied the wrong legal

[15] As stated previously in this opinion, the court also concluded that all of the plaintiff's claims were barred by article first, §§ 4, 5 and 14, of the state constitution, that some, but not all, of the plaintiff's claims were barred by the litigation privilege, and that the plaintiff had not alleged sufficient facts to demonstrate probable cause that it would prevail on its tortious interference claim. Because our conclusion that the plaintiff cannot prevail on its sham litigation claim is sufficient to dispose of this appeal, we need not address whether the court properly concluded that the defendant's alleged conduct is protected by the Connecticut constitution.

[16] On the same day, the court entered an order denying the motion for leave to amend. In addition, on September 30, 2024, the court entered an order awarding the defendant attorney's fees in the amount of $26,880.

standard in analyzing whether the defendant's conduct was protected activity. Specifically, the plaintiff contends that the court should have analyzed the first amendment defense under the *Noerr-Pennington* doctrine; see *United Mine Workers of America* v. *Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L. Ed. 2d 626 (1965); *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S. Ct. 523, 5 L. Ed. 2d 464 (1961) (*Noerr*); and the "sham litigation" exception thereto, established by the United States Supreme Court in *California Motor Transport Co.* v. *Trucking Unlimited*, supra, 404 U.S. 508. The plaintiff claims that, analyzed under that standard, there was probable cause that the defendant's conduct falls within the sham litigation exception and, therefore, that the plaintiff's complaint was not barred by the first amendment. The defendant contends that the plaintiff cannot prevail on its sham litigation claim because the record does not support a finding of probable cause that the defendant's challenges to the facility were objectively baseless, as required to establish that the sham exception applies. We agree with the defendant.[17]

[17] The defendant also contends that the plaintiff's claim is not reviewable because the plaintiff "never once mentioned the *Noerr-Pennington* doctrine, the sham exception to it, any of the cases . . . setting forth the current test for the sham exception . . . or even that there was some established exception to first amendment protections for 'abuse of judicial and administrative proceedings for anticompetitive purposes' . . . ." Although the plaintiff did not expressly raise either the *Noerr-Pennington* doctrine or the sham exception, and we question whether the plaintiff's mere reference to *California Motor Transport Co.* was adequate to put the trial court on notice of its claim, we exercise our discretion to review the plaintiff's claim "because 'the minimal requirements for review [have been] met and . . . the party who raised the unpreserved claim cannot prevail.' " *Forgione* v. *Forgione*, 186 Conn. App. 525, 533, 200 A.3d 190 (2018), quoting *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 157–58, 84 A.3d 840 (2014). Moreover, because the question of whether the plaintiff met its burden to establish probable cause that it would prevail, as required to defeat the defendant's anti-SLAPP motion, is a question of law subject to plenary review, we can address the plaintiff's claim even though the trial court did not expressly address it. See *Robinson* v. *V. D.*, 229 Conn. App. 316, 342, 328 A.3d 198 (2024) (in appeal from denial of anti-

The following legal principles and standard of review govern our review of the plaintiff's claim. Under § 52-196a, "a party may file a special motion to dismiss when the opposing party's complaint is based on the moving party's exercise of, among other things, the right of free speech or the right to petition the government in connection with a matter of public concern." *Priore* v. *Haig*, 344 Conn. 636, 659, 280 A.3d 402 (2022). Pursuant to § 52-196a (e) (3), the moving party bears the initial burden to show by a preponderance of the evidence that the complaint "is based on the moving party's exercise of its right of free speech, right to petition the government, or right of association under the Constitution of the United States or the Constitution of the state in connection with a matter of public concern . . . ." If the moving party satisfies that burden, the burden shifts to the nonmoving party to establish "that there is probable cause, considering all valid defenses, that the [nonmoving] party will prevail on the merits of the complaint . . . ." General Statutes § 52-196a (e) (3).

In the present case, the plaintiff challenges only the court's conclusion that it failed to establish probable cause that it would prevail under the second prong of § 52-196a (e) (3). "The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it." (Internal quotation marks omitted.) *Elder* v. *Kauffman*, 204 Conn. App. 818, 825, 254 A.3d 1001 (2021). "Proof of probable cause is not as demanding as proof by preponderance of the evidence . . . and is substantially less

SLAPP special motion to dismiss, this court addressed question of whether plaintiffs established probable cause that they would prevail on their complaint without remanding to trial court because "determination of whether allegations of a complaint, assuming they are true, demonstrate the existence of probable cause raises a question of law").

than that required for conviction under the reasonable doubt standard." (Citation omitted; internal quotation marks omitted.) *Mulvihill* v. *Spinnato*, 228 Conn. App. 781, 790, 326 A.3d 251, cert. denied, 350 Conn. 926, 326 A.3d 248 (2024). "Probable cause is a flexible common sense standard . . . [that] does not demand that a belief be correct or more likely true than false." (Internal quotation marks omitted.) *36 DeForest Avenue, LLC* v. *Creadore*, 99 Conn. App. 690, 695, 915 A.2d 916, cert. denied, 282 Conn. 905, 920 A.2d 311 (2007).

In assessing whether the plaintiff established probable cause that it would prevail under the second prong of § 52-196a (e) (3), the court must "construe the pleadings, affidavits, and other proof submitted in the light most favorable to the [plaintiff]"; *Mulvihill* v. *Spinnato*, supra, 228 Conn. App. 794; and determine "whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." Id., 795. Whether the plaintiff established probable cause that it would prevail is a question of law subject to plenary review. Id., 790.

The plaintiff argues that the court erred in concluding that the first amendment barred its claims because the court should have analyzed the first amendment defense under the *Noerr-Pennington* doctrine and determined that there was probable cause that the sham litigation exception to that doctrine applies. As this court previously has explained, the *Noerr-Pennington* doctrine stems from a trio of federal antitrust cases: *California Motor Transport Co.* v. *Trucking Unlimited*, supra, 404 U.S. 508, *United Mine Workers of America* v. *Pennington*, supra, 381 U.S. 657, and *Eastern Railroad Presidents Conference* v. *Noerr Motor Freight, Inc.*, supra, 365 U.S. 127; see *Zeller* v. *Consolini*, 59 Conn. App. 545, 550, 758 A.2d 376 (2000); in which the United States Supreme Court held that the first amendment "shields from the Sherman [Antitrust] Act [15 U.S.C § 1

et seq.] a concerted effort to influence public officials regardless of intent or purpose." (Internal quotation marks omitted.) Id. In those cases, the Supreme Court "reasoned that 'it would be destructive of rights of association and of petition to hold that groups with common interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-à-vis their competitors. *California Motor Transport Co.* v. *Trucking Unlimited,* supra, 510–11.' " *Zeller* v. *Consolini,* supra, 550. The doctrine has since "evolved from its antitrust origins to apply to . . . myriad . . . situations in which it shields individuals from liability for petitioning a governmental entity for redress." Id., 551. In *Zeller* v. *Consolini,* supra, 545, this court "adopt[ed] the *Noerr-Pennington* doctrine and its accompanying sham [litigation] exception as the applicable analysis" for CUTPA and tortious interference with business relations claims premised on a defendant's use of agency and court proceedings for an anticompetitive purpose. Id., 554; see also *Procurement, LLC* v. *Ahuja,* 197 Conn. App. 696, 707, 234 A.3d 135 (2020).

The protection afforded by the *Noerr-Pennington* doctrine, however, "is not limitless," as it does not apply to "petitioning activity . . . [that] is a mere sham or pretense to interfere with no reasonable expectation of obtaining a favorable ruling." *Zeller* v. *Consolini,* supra, 59 Conn. App. 551–52. "In *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Industries, Inc.,* 508 U.S. 49, 60–62, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993), the court outlined a two part test to define sham litigation. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. Id., 60. Second, the court should focus on whether the baseless

lawsuit conceals an attempt to interfere directly with the business relationships of a competitor . . . through the use [of] the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon . . . . Id., 60–61." (Internal quotation marks omitted.) *Zeller* v. *Consolini*, supra, 552. "This two-tiered process requires the plaintiff to disprove the challenged lawsuit's *legal* viability before the court will entertain evidence of the suit's *economic* viability." (Emphasis in original.) *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Industries, Inc.*, supra, 61. "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." Id., 60.

The objective prong of the sham litigation exception is a high bar. As the court explained in *Professional Real Estate Investors, Inc.*, a plaintiff invoking the sham exception must show that the challenged litigation was "so baseless that no reasonable litigant could realistically expect to secure favorable relief"; id., 62; and "[t]he existence of probable cause to institute legal proceedings precludes a finding that [a] . . . defendant has engaged in sham litigation." Id. In other words, a plaintiff "[cannot] pierce [a defendant's] [*Noerr-Pennington*] immunity without proof that [the challenged] action was . . . frivolous." Id., 65. Moreover, because "a party's action cannot be objectively baseless when at least one claim in the action has merit"; *Procurement, LLC* v. *Ahuja*, supra, 197 Conn. App. 720; the plaintiff must show that *all* claims in the challenged litigation were frivolous. Thus, under the objectively baseless standard, "[a] defendant will be entitled to *Noerr-Pennington* immunity if it enjoyed virtually *any* success in the underlying litigation, unless [that success is] tainted by fraud."[18] (Emphasis added.) 8 P. Halle & J. Everett,

---

[18] Some federal courts have held that the sham exception may be satisfied if the plaintiff shows that the defendant made fraudulent misrepresentations in the challenged proceeding that affected the outcome of that proceeding.

Business & Commercial Litigation in Federal Courts (R. Haig ed., 5th Ed. 2024) § 87:68. This demanding standard is warranted because "even unsuccessful but reasonably based suits . . . allow the public airing of disputed facts . . . and raise matters of public concern." (Citation omitted; internal quotation marks omitted.) *BE&K Construction Co.* v. *National Labor Relations Board*, 536 U.S. 516, 532, 122 S. Ct. 2390, 153 L. Ed. 2d 499 (2002); see also *Zeller* v. *Consolini*, supra, 59 Conn. App. 553–54 ("[t]he *Noerr-Pennington* doctrine subordinates . . . commercial expediency to the constitutional rights of individuals and groups to petition their government . . . [and] failure to apply [it] aggressively may create a chilling effect on the first amendment right to petition in zoning and other matters" (internal quotation marks omitted)).

In the present case, the complaint alleged that the defendant participated in the following proceedings for the purpose of preventing the construction of the facility: the plaintiff's application for a special permit and

See, e.g., *Mercatus Group*, *LLC* v. *Lake Forest Hospital*, 641 F.3d 834, 843 (7th Cir. 2011) ("a misrepresentation renders an adjudicative proceeding a sham only if the misrepresentation (1) was intentionally made, with knowledge of its falsity; and (2) was material, in the sense that it actually altered the outcome of the proceeding"); *Baltimore Scrap Corp.* v. *David J. Joseph Co.*, 237 F.3d 394, 401–402 (4th Cir. 2001) ("If a fraud exception to *Noerr Pennington* does exist, it extends only to the type of fraud that deprives litigation of its legitimacy. . . . If a judgment is not procured by fraud or deceit, it cannot fall within any fraud exception to *Noerr-Pennington*." (Citations omitted.)), cert. denied, 533 U.S. 916, 121 S. Ct. 2521, 150 L. Ed. 2d 693 (2001); but see *Armstrong Surgical Center*, *Inc.* v. *Armstrong County Memorial Hospital*, 185 F.3d 154, 162 (3rd Cir. 1999) (plaintiff's claim that defendant committed antitrust violation by inducing state regulators to deny certificate of need application on basis of allegedly false and misleading statements did not satisfy sham exception because "[l]iability for injuries caused by such state action is precluded even where it is alleged that a private party urging the action did so by bribery, deceit or other wrongful conduct that may have affected the decision making process"), cert. denied, 530 U.S. 1261, 120 S. Ct. 2716, 147 L. Ed. 2d 982 (2000). Connecticut courts have yet to address this issue and we need not address it here because the plaintiff has not raised it in the present appeal.

site plan application before the commission; the defendant's subsequent appeal from the commission's decision to the Superior Court; the plaintiff's application for a certificate of need before the OHCA; and the defendant's subsequent appeals from the OHCA proceedings to the Superior Court, this court, and our Supreme Court.[19] Because § 52-196a (e) (3) provides that the plaintiff was required to establish probable cause that it would prevail on its claims, in assessing the plaintiff's claim that the sham exception applies to the defendant's conduct in these proceedings, we review the record to determine whether the plaintiff met its burden to establish probable cause that the defendant's challenge in each proceeding was objectively baseless. See *Robinson* v. *V. D.*, 229 Conn. App. 316, 342, 328 A.3d 198 (2024) (reviewing trial court record to determine whether plaintiffs established probable cause that they would prevail on claim).

As an initial matter, we note that, in arguing on appeal that the sham litigation exception applies, the plaintiff primarily directs its arguments toward the defendant's intervention in the proceedings before the OHCA. Although the plaintiff makes one passing reference to

---

[19] As noted previously in this opinion, the complaint also alleged that the defendant made statements to the public and to the press intended to drum up opposition to the facility. On appeal, neither party addresses whether these statements—which were made outside of the proceedings at issue—are protected by the *Noerr-Pennington* doctrine and, if so, whether they are subject to the sham exception. In addition, the plaintiff does not claim that the court erred in concluding that these statements were a matter of public concern. In fact, in the section of the plaintiff's brief addressing the court's first amendment analysis, the plaintiff does not mention the defendant's statements to the public and to the press at all. Accordingly, we decline to address whether the court erred in concluding that the first amendment barred the plaintiff's claims with respect to these statements. See, e.g., *Procurement, LLC* v. *Ahuja*, supra, 197 Conn. App. 703 n.3 (declining to address application of *Noerr-Pennington* doctrine and sham exception to alleged nonpetitioning activity where plaintiff failed adequately to brief that issue).

the proceedings before the commission in connection with its argument regarding the subjective prong of the sham exception, the plaintiff otherwise focuses exclusively on the proceedings before the OHCA. Similarly, before the trial court, the plaintiff did not make any allegations or present any evidence concerning the factual or legal bases of the defendant's claims before the commission or in its ensuing administrative appeal from the commission's decision.[20] Nor did the plaintiff present any information about the legal basis for the defendant's claims in its administrative appeal from the OHCA proceedings, or any argument to support a claim that the defendant's subsequent appeals to this court and our Supreme Court were objectively without merit. The plaintiff, which bore the burden of establishing probable cause that it would prevail on these claims, is unable to satisfy its burden without providing a sufficient record to establish that the defendant's claims were objectively baseless. Accordingly, we conclude that the plaintiff failed to establish probable cause that the sham litigation exception applies to the defendant's challenge before the commission, its appeal from the decisions of the commission, and its appeals from the OHCA proceedings.

---

[20] The only information in the record that even arguably relates to the defendant's claims before the commission and the ensuing administrative appeal appears in two paragraphs in the complaint, in which the plaintiff alleged that the defendant made "false and damaging statements about [the plaintiff] and its leadership before the [commission] and the OHCA, falsely characterizing them as nothing more than money-grabbing investors with no legitimate interest in serving the addiction treatment population in Connecticut," and that, during the appeal from the commission's decision, Schwab stated that the plaintiff would " 'skim the cream off the top' . . . in terms of attracting patients with 'good insurance policies.' " There is no information in the record, however, that provides any context to explain whether these statements were relevant to the merits of the defendant's legal claims, and the plaintiff does not argue on appeal that these statements show that the defendant's legal claims in the relevant proceedings were objectively baseless. Accordingly, these allegations do not support the conclusion that the defendant's claims before the commission and in its subsequent administrative appeal were objectively baseless.

With respect to the OHCA proceedings themselves, although the record does include information about at least some of the arguments that the defendant presented to the OCHA, it does not support the plaintiff's claim that the defendant's challenge was objectively baseless. To the contrary, the information that was presented to the court about the OHCA proceedings supports the conclusion that the defendant had an objectively reasonable basis for challenging the plaintiff's application for a certificate of need.[21]

In its request to intervene in the certificate of need proceeding, the defendant stated that it intended to present evidence that "(1) the [plaintiff] has failed to establish a clear public need for the facility; (2) the proposed facility will have a significant and detrimental impact on existing residential substance use disorder treatment facilities located in Connecticut, including the [defendant's] facility; and (3) the proposed application will not be in the best interests of the statewide health care delivery system." As the plaintiff acknowledges, the hearing officer agreed with the defendant and issued a proposed final decision recommending that the department deny the plaintiff's application. Although the department did not adopt the proposed final decision and instead granted the plaintiff's application by way of the agreed settlement, the department's findings that accompanied the agreed settlement were consistent with many of the arguments the defendant made in its motion to intervene. Specifically, the department found that "[t]he [plaintiff] has not sufficiently demonstrated that there is a clear public need for the

---

[21] As mentioned previously; see footnote 13 of this opinion; the plaintiff did not present any evidence in support of its opposition to the special motion to dismiss. Thus, aside from the allegations in the complaint, all of the information in the record about the defendant's challenge to the plaintiff's certificate of need application is from the exhibits submitted by the defendant in support of its special motion to dismiss.

[facility]"; that "[t]he [plaintiff] did not provide any evidence that its proposal would not have a negative economic impact on facilities like [the defendant's] or the behavioral health care system in Connecticut"; that "[t]he [plaintiff's] proposal . . . will have a negative impact on the financial strength of the behavioral health care system in the state"; and that the plaintiff "failed to provide credible evidence that its program would be a high quality, cost-effective model that would avoid negatively impacting the financial well-being of nonprofit substance abuse treatment facilities in Connecticut." Moreover, as discussed previously; see footnotes 8 and 9 of this opinion and accompanying text; the department found against the plaintiff on ten of the twelve statutory factors that it was required to consider in assessing the plaintiff's application. Even though the defendant ultimately was not successful in convincing the department to deny the plaintiff's application, the defendant's initial success before the hearing officer, together with the department's favorable findings, weigh heavily against the plaintiff's claim that the defendant lacked an objectively reasonable basis for its claims in that proceeding. The plaintiff's failure to provide evidence or argument to the contrary is fatal to its claim that the defendant's challenge before the OHCA constituted sham litigation.

The plaintiff nevertheless points to two arguments that the defendant made in the OHCA proceedings that, the plaintiff contends, show that the defendant's challenge to the plaintiff's certificate of need application was baseless. First, the plaintiff notes that the defendant "told the OHCA that there was no public need for [the plaintiff's] substance abuse treatment services, but then sought to expand its own facility to provide the same services and serve the need it claimed did not exist."[22]

---

[22] As the defendant notes in its appellate brief, it appears from the record that the defendant's subsequent decision to expand its own facility to serve the target population was not inconsistent with its claim that there was

Second, the plaintiff relies on the fact that the defendant "told the OHCA that [the] facility would increase emergency services costs, but then dismissed these same concerns when raised about its proposed expansion." The plaintiff argues that this "incongruity" between the defendant's arguments to the OHCA and its subsequent conduct "at least provides good reason to believe . . . that those objections were disingenuous and baseless." We disagree.

First, the mere fact that the defendant took a position in later proceedings that arguably was inconsistent with certain arguments it previously had made to the OHCA does not mean that those arguments were objectively meritless at the time that they were made. To satisfy the sham litigation exception, the plaintiff was required to show that the defendant's challenge to the plaintiff's application was "frivolous"; *Professional Real Estate Investors, Inc.* v. *Columbia Pictures Industries, Inc.*, supra, 508 U.S. 65; in that "no reasonable litigant could realistically [have] expect[ed]" to prevail. Id., 62. The plaintiff did not present any evidence to indicate that the defendant did not have a good faith basis for its arguments at the time it presented them to the OHCA. That the defendant later took a position in a different proceeding that differed with respect to some of the arguments it made to the OHCA does not mean that those arguments were objectively baseless. Cf. *Diamond 67, LLC* v. *Oatis*, 167 Conn. App. 659, 688–89, 144 A.3d 1055 (evidence supported claim that defendants lacked good faith basis for claim that proposed construction project would pollute groundwater, so as to satisfy sham exception, based on emails indicating

no clear public need for the plaintiff's facility. Specifically, in the agreed settlement, the department found that "[t]he [plaintiff] has not sufficiently demonstrated that there is a clear public need for the [facility]" and, citing Schwab's testimony, further found that "[e]xisting providers in the service area can incrementally add beds to existing operations in a cost effective manner."

defendants were aware their claims were false when they made them), cert. denied, 323 Conn. 926, 150 A.3d 230 (2016), and cert. denied, 323 Conn. 927, 150 A.3d 228 (2016), and cert. denied, 323 Conn. 927, 150 A.3d 228 (2016), and cert. denied, 323 Conn. 927, 150 A.3d 229 (2016), and cert. denied, 323 Conn. 927, 150 A.3d 230 (2016).[23]

Second, and perhaps more importantly, even if the alleged inconsistency in the defendant's arguments does establish that those specific arguments were baseless, that still would not be sufficient to satisfy the plaintiff's burden. As this court previously recognized, because "a party's action cannot be objectively baseless when at least one claim in the action has merit"; *Procurement, LLC* v. *Ahuja*, supra, 197 Conn. App. 720; a party "[does] not need to show a realistic expectation of success on *all* of [the] arguments in each petition . . . ." (Emphasis in original; internal quotation marks omitted.) Id. Thus, the plaintiff could not meet its burden by pointing only to certain arguments made by the defendant before the OHCA that were allegedly

---

[23] The plaintiff incorrectly relies on *Diamond 67, LLC*, in arguing that there was probable cause that the sham exception applies because the defendant made "knowingly false" claims to the OHCA. First, the plaintiff did not present evidence of any "knowingly false submissions" on the part of the defendant, but merely alleged that the defendant took a different position on certain issues in subsequent proceedings. In contrast, in *Diamond 67, LLC*, the plaintiff submitted evidence that the defendants, who had intervened in prior proceedings to object to a construction project on the basis that it would pollute a reservoir they claimed was a source of drinking water, knew that claim was false at the time they submitted their verified petitions to intervene. See *Diamond 67, LLC* v. *Oatis*, supra, 167 Conn. App. 688–89. Second, as discussed herein, the plaintiff here did not allege or present any evidence that *all* of the defendant's claims before the OHCA were objectively baseless, but only that some of their arguments were inconsistent with positions they took in later proceedings. In contrast, because the sole basis of the defendants' opposition to the construction project in *Diamond 67, LLC*, was that it would pollute the reservoir; see id., 667–68; evidence that the defendants knew their claim was false necessarily sufficed to establish that their entire claim was baseless.

inconsistent with its later conduct. Instead, the plaintiff was required to establish that no reasonable litigant could have expected to prevail in challenging the plaintiff's application for a certificate of need. As discussed previously, the record before the court showed the opposite: that the defendant had an objectively reasonable basis for challenging the plaintiff's application.

On the basis of the foregoing, we conclude that the plaintiff failed to establish probable cause that it would prevail on its claims in light of the defendant's first amendment defense and, accordingly, that the court did not err in concluding that the complaint was barred by the first amendment. Because the court's conclusion in that regard, standing alone, was sufficient to justify its dismissal of the complaint, we further conclude that the court did not err in dismissing the plaintiff's complaint.

The judgment is affirmed.

In this opinion the other judges concurred.